UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JUSTIN S. CLARK,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPARTMENT OF<br>CORRECTION COMMISSIONER,<br><br>Defendant. | CAUSE NO. 3:17-CV-626-PPS-MGG |

<u>OPINION AND ORDER</u>

Plaintiff Justin Clark is incarcerated at the Miami Correctional Facility ("MCF"). In this lawsuit—he's representing himself—he alleges that the Defendant, Indiana Department of Correction ("IDOC"), is unduly burdening the practice of his Vaishnavite Hindu religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA" or "the Act"). He is requesting that MCF recognize his religion; allow him to keep an eighteen-volume Srimad Bhagavatam in his cell; serve him only uncooked vegetarian meals without eggs, garlic, or onions; allow him to build an altar in his cell; assign him to a single-person cell; and allow him to be present when his cell is searched so as to ensure that his altar is not profaned. (ECF 1.) Defendant filed a motion for summary judgment (ECF 39) on all of Mr. Clark's claims, which I now grant in part and deny in part.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material

dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

As noted above, Mr. Clark is seeking injunctive relief under RLUIPA, 42 U.S.C. § 2000cc *et seq*. Among other things, the Act protects prisoners from the government imposing significant burdens upon their exercise of religion unless such imposition is the least restrictive means of furthering a compelling governmental interest. Here's the language of the Act:

> No government shall impose a substantial burden on the religious exercise of a person . . . confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

"The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7)(A), but "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015). While I defer to day-to-day judgments of prison officials, "RLUIPA does not permit the unquestioning deference required to accept the Department's assessment." *Holt*, 135 S.Ct. at 858.

In reviewing Defendant's motion for summary judgment, I am tasked with determining if there are any genuine issues of material fact regarding: 1) the sincerity of Mr. Clark's religious beliefs; 2) whether MCF is substantially burdening his religious

3

exercise; 3)whether the burdens are imposed to further a compelling governmental interest; and 4) whether the imposed burdens are the least restrictive means of furthering that compelling governmental interest. If there are no genuine issues of material fact, I then go on to decide whether the defendant is entitled to judgment as a matter of law.

In this lawsuit, Mr. Clark is seeking an injunction with six parts: that MCF be ordered to: 1) recognize his religion; 2) assign him to a single-person cell; 3) allow him to keep in his cell an eighteen-volume Srimad Bhagavatam; 4) allow him to build an altar in his cell; 5) allow him to be present when his cell is searched so as to ensure that his altar is not profaned; and 6) serve him only uncooked vegetarian meals without eggs, garlic, or onions.

I will take up each of these issues in turn below, but in summary, Mr. Clark has not produced any evidence on the first two issues, so summary judgment will be granted on those claims. But genuine issues of material fact prevent the entry of summary judgment on the remainder of his requests for injunctive relief.

I'll start with the claim that Mr. Clark wants MCF to officially recognize his religion in brochures. In particular, he wants his Vaishnavite Hindu religion to be listed in the prison literature as one of the religions practiced by inmates at MCF. Yet, Mr. Clark has failed to show that such omission places a substantial burden on him. In other words, it is unclear how such an omission "seriously violates [his] religious beliefs." *Holt*, 135 S.Ct. at 862 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2757 (2014)). Without such evidence it's difficult to conceive how an omission of Vaishnavite

Hindu religion from the prison's literature substantially burdens Mr. Clark's religious practices. Therefore, I will grant summary judgment for Defendant on this issue.

Mr. Clark asks next that he be assigned a one-person cell. The problem with this request is that he has presented no evidence telling me *why* such an arrangement is needed for his religious exercise. That is, he hasn't pointed to any evidence that establishes that having a cellmate substantially burdens his exercise of religion and, without crossing this threshold, Mr. Clark cannot prevail on his RLUIPA claim. A single-occupancy cell may be more enjoyable and peaceful and might have other benefits; but nothing in the briefs or the accompanying materials suggests that having a cellmate significantly burdens Mr. Clark's exercise of religion. Furthermore, MCF does not have one-person cells. (ECF 39-1, ¶ 23.) Defendant submits that housing Mr. Clark by himself is impossible due lack of prison space; in addition, such arrangement would cause other inmates to complain of discrimination. (*Id*. at ¶25–26.) Therefore, I will enter summary judgment in Defendant's favor on this issue.

I'll move now to the issues where questions of fact remain. For starters, except for Mr. Clark's desire for a specific diet, Defendant concedes that Mr. Clark's religious beliefs are sincere, or at the very least there are questions of fact about the sincerity of his beliefs that he must possess the Srimad Bhagavatam in his cell, erect an altar and be present during searches. (*See* ECF 52 at 2.) *See also Howard v. United States*, 864 F. Supp. 1019, 1024 (D. Colo. 1994) ("The determination of whether an individual is sincere in his beliefs is a factual one."); *Shaheed-Muhammad v. Dipaolo,* 393 F. Supp. 2d 80, 90 (D. Mass.

5

2005) ("I question any court's ability to determine the sincerity of a plaintiff's beliefs on a cold record.").

Furthermore, there's no dispute that MCF's policies are substantially burdening Mr. Clark's religious exercise in these areas. Likewise, there's no disagreement that Defendant's policies at issue are aimed at furthering compelling governmental interests: Mr. Clark readily acknowledges that he is "at a high risk prison and a high risk [himself]" (ECF 51 at 6) and agrees that Defendant has legitimate concerns as to how his proposed religious exercise may affect the safety and security at the prison.

Therefore, as to the remaining matters in question, Defendant's motion for summary judgment boils down to whether there are genuine issues of material fact as to whether the substantial burdens placed upon Mr. Clark's religious exercise are the least restrictive means of furthering the safety and security at the prison. The focus is not on whether the Defendant is using the least restrictive means in furthering a broadly formulated interest. Instead, RLUIPA "contemplates a more focused inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person––the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 135 S. Ct. at 863 (quotation marks and citations omitted). Defendant bears the burden of showing that it is employing the least restrictive means to achieve its legitimate governmental goals. *Id.*

Concerning the eighteen volumes of the Srimad Bhagavatam, MCF prohibits inmates from having more than ten books in their cells at a time or any hardbound

books. Defendant claims this policy aims to reduce the potential places for hiding contraband, including weapons. Furthermore, it says hardbound books may be used as weapons. Defendant is particularly concerned with Mr. Clark having eighteen hardbound volumes of Srimad Bhagavatam because of his disciplinary issues at the prison. Defendant points out that, from February 2017 through February 2019, Mr. Clark has been disciplined by prison officials twice for possession of a deadly weapon; twice for battering another offender; once for possession of a controlled substance; and once for fleeing or physically resisting staff. (*See* ECF 39 at 1–2.)

Defendant's concerns are legitimate and, as noted above, uncontested. However, Defendant fails to explain how the prohibition against the number and the types of books in Mr. Clark's case is the least restrictive means for achieving prison safety and security. For example, Defendant does not explain why it settled on the maximum of ten books as opposed to eleven, or twelve, or even eighteen. Moreover, Defendant ignores Mr. Clark's claim that the IDOC's overall policy allows up to twenty books per prisoner, and, assuming that's true, it does not explain why eight fewer books are allowed at MCF. Furthermore, MCF's policy does not differentiate between ten books at 100 pages each and ten books at 500 pages each, thus undermining some of the premises for the policy to begin with.

In addition, Mr. Clark has agreed to remove the hard covers from the Srimad Bhagavatam volumes to allay concerns about the books being used as weapons. (ECF 51 at 4.) Defendant nevertheless claims that Mr. Clark is determined to keep the hard covers on the books (ECF 52 at 3). Such inconsistencies cannot be resolved at this

7

juncture of the proceedings. In short, there is a genuine issue of material fact regarding whether prohibiting possession of Srimad Bhagavatam is the least restrictive means of addressing the prison's legitimate security concerns.

I'll next address Mr. Clark's request that he be allowed to maintain an altar in his cell. According to Defendant, prisoners may have altars in their cells but the altars may not contain items outside of MCF's approved list. (ECF 39-1, ¶ 28.) In addition, any altar is subject to being searched by the prison employees with or without the offender being present. (*Id.*, ¶¶30 ,32.)

Mr. Clark wants to erect an altar in his cell which would include non-stone and non-metal sculptures of his deities and various vessels, as well as pictures of persons central to his religion. Although Defendant acknowledges repeatedly that Mr. Clark is seeking non-stone and non-metal sculptures for his altar, it curiously continues to dwell on MCF's prohibition against "*stone* or glass figurines" as "related to legitimate safety and security concerns." (ECF 52 at 7 (emphasis added).) Defendant has not explained how MCF's prohibition against Mr. Clark erecting an altar according to his design is the least restrictive means employed by the prison to ensure the safety and security at the prison. Summary judgment must therefore be denied on this issue.

With the motion for summary judgment being denied on this issue, it's too early to discuss the scope of the searches the prison officials can carry out with respect to the altar until the factfinder has resolved whether Mr. Clark may have the altar in the first place. Therefore, the search issue will be decided later, if still applicable.

Lastly, I will address the dietary requests Mr. Clark has sought. Mr. Clark wants to be served only uncooked vegetarian meals without eggs, garlic, or onions. In its reply brief, Defendant insists that "[Mr.] Clark concedes that he does not intend to stick to his requested diet" (ECF 52 at 6) and cites generally to Mr. Clark's response brief in support. Defendant then declares that Mr. Clark "acknowledges that he regularly orders and eats commissary items that are not vegetarian in nature and certainly contain eggs, garlic and onions." (*Id.*) For this more focused proposition Defendant refers me to pages 1–2 of Mr. Clark's response brief. Yet, neither the two cited pages nor any other portion of his brief betray any sense that Mr. Clark's desire for uncooked vegetarian diet is an obvious sham. Rather, he readily confesses that he has, in the past, "ordered food which contradicts [his] religious preference for uncooked vegetarian meals without eggs, onions, and garlic" (ECF 51 at 2) and confesses to be a "sinner" in that regard (*Id.* at 3). But apart from occasional lapses, there's no indication that Mr. Clark regularly eats prohibited foods.

It is true that "[e]vidence of nonobservance is relevant on the question of sincerity." *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). However, it remains fundamentally a factual question that I cannot answer at summary judgment. *Id.* In sum, whether Mr. Clark uses his religion more as a weapon than as a sincere devotion will need to be decided at a trial.

Finally, Defendant has failed to show that MCF's refusal to accommodate him has a legitimate purpose or that such refusal is the least restrictive means to achieve that

purpose. Accordingly, I will deny Defendant's motion for summary judgment on this issue.

**Conclusion**

The Court GRANTS Defendant's motion for summary judgment in relation to Mr. Clark's request for injunctive relief that MCF:

- recognize his religion; and
- assign him to a single-person cell.

The Court DENIES Defendant's motion for summary judgment in relation to Mr. Clark's request for injunctive relief that MCF:

- allow him to keep in his cell an eighteen-volume Srimad Bhagavatam;
- allow him to build an altar in his cell;
- allow him to be present when his cell is searched so as to ensure that his altar is not profaned; and
- serve him only uncooked vegetarian meals without eggs, garlic, or onions.

The parties are further ORDERED to appear for a telephonic status conference to discuss setting a trial date and other matters. A date and time for that hearing will be set by separate order.

SO ORDERED on March 9, 2020.

s/ Philip P Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT